## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Orville Shaw,** | **Case No.  1:21cv1272** |
| **Plaintiff,** | |
| **-vs-** | |
| | **JUDGE PAMELA A. BARKER** |
| **United States Department of Homeland Security,** | **MEMORANDUM OPINION & ORDER** |
| **Defendant** | |

Currently pending is Plaintiff Orville Shaw's Motion for Return of Illegally Seized Property Pursuant to Fed. R. Crim. 41(g). (Doc. No.  1).  Defendant United States Department of Homeland Security (hereinafter "Defendant" or "the United States) filed a Brief in Opposition, to which Plaintiff replied.  (Doc. Nos. 5, 6.)  Also pending is Defendant's Motion to Dismiss (Doc. No. 8.)  Plaintiff did not file a response.  Pursuant to this Court's Order, the parties submitted Supplemental Briefs on April 25, 2022.  (Doc. Nos. 10, 11.)

For the following reasons, Plaintiff's Motion for Return (Doc. No.  1) is DENIED -- and Defendant's Motion to Dismiss (Doc. No. 8) is GRANTED-- with respect to the $142, 140.00 in U.S. Currency, four cellphones, laptop computer, and documents seized from Plaintiff on April 29, 2021. Defendant's Motion to Dismiss (Doc. No. 8) is DENIED WITHOUT PREJUDICE with respect to the additional $19,860.00 in U.S. Currency that was also allegedly seized from Plaintiff.   The Court will conduct an in-person evidentiary hearing regarding the status of this additional currency in Courtroom 16A at 2:00 p.m. on May 24, 2022.

## I.    Factual Background

Plaintiff Orville Shaw (hereinafter "Shaw") alleges the following facts.   On April 29, 2021, Shaw and an unidentified traveling companion were at Cleveland Hopkins International Airport (hereinafter "Hopkins") for a flight to Dallas, Texas.  (Doc. No. 1 at p. 3.)  Shaw presented one checked in suitcase, one carry-on bag, and a briefcase to the Transportation Security Administration ("TSA") for screening after checking in for his flight.  (*Id*.)  TSA officers pulled the carry-on bag off the conveyor belt and informed Shaw that it would need to go through a subsequent screening.  (*Id*.)  Upon further inspection, TSA officers detected a bulk amount of U.S. Currency in the bag.  (*Id*.)

Shaw and his traveling companion were taken to a "secluded office" in the airport.  (*Id*.)  Shaw was separated from his companion and "placed in an interrogation room where he was questioned extensively by agents who identified themselves as acting on behalf of the U.S. Department of Homeland Security."  (*Id*.)  Shaw alleges that his traveling companion was taken to a separate room and questioned by another pair of federal agents.  (*Id*.)

During questioning, Shaw admitted that the currency found in his carry-on bag was his.  (*Id*.)  Shaw states that he explained that he was a businessman in the real estate investment industry and had been in Cleveland visiting properties that he planned to purchase.  (*Id*.)  The Homeland Security agents opened Shaw's carry-on bag and began removing its contents.  (*Id*.)  They then instructed Shaw to disclose the contents of his briefcase.  (*Id*. at pp. 3-4.)  Shaw indicated that his briefcase contained a laptop, cellular devices, and several documents necessary to complete his real estate business during his travels.  (*Id.* at p. 4.)  According to Shaw, the agents instructed him to show them the contents of his briefcase.  (*Id.*)  Shaw complied.  (*Id.*)  The agents then seized Shaw's laptop, cellular devices, and documents "despite the agents' assurances that they sought only to take

2

inventory of what was brought into the room to protect themselves from any potential accusations of property being taken that was never brought into the room." (*Id*.)

Shaw alleges that the agents proceeded to question him regarding whether he had a "money license," which they allegedly defined as "a special license you need to have to carry money between states." (*Id*.)  The agents also allegedly questioned Shaw regarding his activities while in Ohio, how long he had been in Ohio, the address at which he was residing in Ohio, why he was returning to Texas, and his citizenship status.  (*Id*.)  Shaw claims that "these agents used various deceptive tactics to induce [him] to disclose information and consent to searches that, otherwise, they lacked probable cause to obtain through a warrant."  (*Id*.)

After several hours, the agents returned Shaw's luggage.  (*Id*.)  However, they informed Shaw that they would be keeping "all of the monies found."  (*Id*.)  In addition, the agents indicated that they were seizing the four (4) cell phones, laptop computer, and business paperwork obtained from Shaw's briefcase.  (*Id*.)  When Shaw protested that he needed at least some of these items to conduct his business, the agents allegedly told him that he would likely get his property back sooner if he provided the passcode to the phones and consented to a cellphone search.  (*Id*. at p. 5.)   Shaw refused to give consent.  (*Id*.)  The agents allegedly "threatened to obtain a search warrant . . . and [stated] that [Shaw] may be indicted for money laundering and/or any other crimes the money came from, including 'drugs or anything like that' if he did not cooperate." (*Id*.)

## II.    Procedural History

The United States asserts that, subsequent to the seizure, U.S. Customs and Border Protection's ("CBP") Fines, Penalties & Forfeiture Office commenced an administrative forfeiture proceeding against $142,140.00 in U.S. Currency, which is the amount that the United States claims

was seized from Shaw's luggage on April 29, 2021.  (Doc. No. 5 at p. 2.)  The United States asserts that it notified Shaw of the proceeding by certified mail.  (*Id*.)  On May 13, 2021, Shaw submitted a Verified Claim for approximately $162,000.00 in U.S. Currency, four cellular devices, one laptop computer, and "various documents related to the operation of [his] business including tax documents." (Doc. No. 11-1.)

On July 1, 2021, Shaw commenced the instant action by filing a Motion for the Return of Illegally Seized Property pursuant to Fed. R. Civ. P. 41(g).  (Doc. No. 1.)  Therein, he seeks the return of (1) $162,000.00 in U.S. Currency; (2) four cellular devices; (3) one laptop computer; and (4) "various documents," all of which he claims were seized in violation of his Fourth Amendment rights. (*Id*.) The United States filed a Response on August 26, 2021, to which Shaw replied.  (Doc. Nos. 5, 6.)  The United States then filed a Sur-Reply on September 9, 2021. (Doc. No. 7.)

Meanwhile, on August 19, 2021, the United States instituted a civil forfeiture action in this Court against $142,140.00 in U.S. Currency.  *See United States v. $142,140.00*, Case No. 1:21cv1616 (N.D. Ohio) (Barker, J.) (hereinafter referred to as "the civil forfeiture action.")  Shaw filed a Verified Claim in that action on September 22, 2021, in which he (among other things) again insisted that the Government seized approximately $162,000.00 (rather than $142,140.00) from him during the April 29, 2021 incident.  (*Id*. at Doc. No. 3.)  Shaw later filed a Motion to Dismiss the civil forfeiture action pursuant to Fed. R. Civ. P. 12(b)(6), which this Court denied on April 14, 2022.  (*Id*. at Doc. Nos. 4, 7.)

In September 2021, the United States returned Shaw's cell phones, laptop, and documents. (Doc. No. 8 at p. 2.)  Several months later, on January 28, 2022, the United States filed a Motion to Dismiss the instant action seeking relief under Rule 41(g).  (*Id*.)  Shaw did not file a response.

4

On April 15, 2022, this Court ordered the parties to submit simultaneous supplemental briefs regarding the additional $19,860.00 in U.S. Currency that was allegedly seized by federal agents, i.e., the difference between the $162,000.00 that Shaw claims was seized and the $142,140.00 that the United States claims was seized.  (Doc. No. 9.)  Specifically, the Court asked the parties to address whether Shaw's claim to the additional $19,860.00 in currency is properly addressed in the instant Rule 41(g) action (Case No. 1:21cv1272) or the pending civil forfeiture action (Case No. 1:21cv1616).  (*Id.*)  The parties submitted their supplemental briefs on April 25, 2022.  (Doc. Nos. 10, 11.)

### III.    Legal Standard

Federal Rule of Criminal Procedure 41(g) provides as follows:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g).  "Rule 41(g) may be invoked ... to seek the return of property that was seized but not forfeited," *Suggs v. United States*, 256 Fed. Appx 804, 806 (7th Cir. 2007), or "to recover evidence that the Government no longer needs," *United States v. Stevens*, 500 F.3d 625, 628 (7th Cir. 2007). However, "Rule 41(g) permits only the recovery of property in the possession of the Government." *Stevens*, 500 F.3d at 628.  "Therefore, if the Government no longer possesses the property at issue, no relief is available under Rule 41(g)." *Id*. *See also United States v. Locke*, 2018 WL 11337480 at * 1 (6th Cir. May 22, 2018) ("[P]rior to obtaining relief, the person seeking the return of property must carry 'his burden of showing real or constructive possession of the property by the federal government.'") (quoting *United States v. Obi*, 100 Fed. Appx. 498, 499 (6th Cir.

5

2004)); *Augustin v. United States*, 2019 WL 13149604 at * 1 (E.D. Tenn. April 19, 2019), *aff'd*, *United States v. Augustin*, Case No. 19-5567 (6th. Cir.  Jan. 10, 2020) (slip opinion).

In addition, the Sixth Circuit has held that Rule 41(g) is an equitable remedy that may only be used when the defendant lacks an adequate remedy at law.  *See Shaw v. United States*, 891 F.2d 602, 604 (6th Cir. 1989); *Brown v. United States*, 692 F.3d 550, 552 (6th Cir. 2012) (citing *DeAlmeida v. United States*, 459 F.3d 377, 382 (2nd Cir. 2006)).  *See also United States v. Hill*, 2018 WL 1621088 at * 8 (N.D. Ohio Apr. 4, 2018).  Thus, "[a]fter the government initiates forfeiture proceedings and notifies a claimant of the proceedings, a claimant may no longer use [Rule 41(g)], but instead must submit to the statutory procedures governing civil forfeiture proceedings." *United States v. One 1974 Learjet 24D, Serial Number 24D-290, Mexican Registration XA-RMF*, 191 F.3d 668, 673 (6th Cir. 1999).  *See also Shaw*, 891 F.2d at 603–04; *United States v. Oguaju*, 107 Fed. Appx. 541, 542 (6th Cir. 2004); *United States v. $1,700,000*, 545 F.Supp.2d 645, 653 (E.D. Mich. 2008); *Baranski v. Fifteen Unknown Agents of ATF*, 195 F.Supp.2d 862, 868 (W.D. Ky. 2002).

As noted above, Rule 41(g) states that district courts "must receive evidence on any factual issue necessary to decide the motion."  Fed. R. Crim. P. 41(g).  Courts have held that an evidentiary hearing "is required only if needed to determine a 'disputed fact necessary to resolution of the motion.'" *Peloro v. United States*, 488 F.3d 163, 177 (3rd Cir. 2007) (quoting *United States v. Chambers*, 192 F.3d 374, 378 (3rd Cir. 1999)).  An evidentiary hearing is not necessarily required where "affidavits or documentary evidence, such as chain of custody records, [are] sufficient to support a fact finder's determination." *United States v. Albinson*, 356 F.3d 278, 282 (3rd Cir. 2004). *See also Augustin*, 2019 WL 13149604 at * 1; *United States v. Approximately $16,500.00 in U.S. Currency*, 113 F.Supp.3d 776, 780 (M.D. Pa. June 30, 2015).

## IV.    Analysis

In his Rule 41(g) Motion, Shaw argues that his property should be returned because it was seized in violation of his Fourth Amendment rights.  (Doc. No. 1 at p. 6-8.)  He asserts that "money is not contraband *per se*" and does not pose any kind of threat and, therefore, "the only purpose for the seizure of [his] money was to initiate, or continue, a criminal investigation, which is beyond the scope of an administrative search."  (*Id*.)  Shaw argues that the agents lacked probable cause and acted with "total disregard for the law" when they searched his luggage and seized its contents without a valid warrant.  (*Id*.)  He complains that the agents improperly placed him under arrest and falsely imprisoned him in the airport for an extended period of time, causing him extreme stress.  (*Id*.)  As noted above, Shaw seeks the return of (1) $162,000.00 in U.S. Currency; (2) four cellular devices; (3) one laptop computer; and (4) "various documents," all of which he claims were seized in violation of his Fourth Amendment rights.  (*Id*.)

In response to Shaw's Motion, and in its own Motion to Dismiss, the United States argues that Shaw's Motion should be denied and the instant action should be dismissed because (1) the United States has already returned Shaw's cell phones, laptop, and documents; and (2) the pending forfeiture action (Case No. 1:21cv1616) provides an adequate remedy at law for Plaintiff to contest the forfeiture of the $142,140.00 in U.S. Currency.  (Doc. No. 8 at p. 2.)  With regard to the additional $19,860.00 in U.S. Currency, the United States originally asserted that Shaw's claim to this currency should be dismissed because the pending forfeiture action is the proper vehicle to address this claim, rather than the instant Rule 41(g) action. (*Id*.) In its Supplemental Briefing, however, the United States changes course and concedes that Shaw's claim to this additional currency should be addressed in the instant action.  (Doc. No. 10 at p. 2.)  The United States argues, however, that Shaw's request

for return of the $19,860.00 should nonetheless be denied because the United States "does not possess nor did it ever seize an additional $19,860.00 in U.S. Currency" from Shaw.  (*Id*. at p. 7.)

The Court will address the viability of Shaw's Rule 41(g) action with respect to the (1) cellular devices, laptop, and documents; (2) $142,140.00 in U.S. Currency; and (3) additional $19,860.00 in U.S. Currency, separately below.

### A.     The Cellular Devices, Laptop, and Documents

For the following reasons, Shaw's request for the return of his cellular devices, laptop, and documents is denied.  The United States asserts (and Shaw does not contest) that federal agents returned these items to Shaw by September 13, 2021.  (Doc. No. 7 at 2; Doc. No. 8 at 2.)  As noted above, "Rule 41(g) permits only the recovery of property in the possession of the Government." *Stevens*, 500 F.3d at 628.  "Therefore, if the Government no longer possesses the property at issue, no relief is available under Rule 41(g)."  *Id*. *See also Locke*, 2018 WL 11337480 at * 1 ("[P]rior to obtaining relief, the person seeking the return of property must carry 'his burden of showing real or constructive possession of the property by the federal government.'"); *Obi*, 100 Fed. Appx. at 499 (same); *Augustin*, 2019 WL 13149604 at * 1 (same).

Here, it is uncontested that the United States returned Shaw's cellular devices, laptop, and documents.[1]  As the United States no longer possesses these items, Shaw's request for return of the same is denied.  Accordingly, Shaw's Motion is denied, and the United States' Motion to Dismiss is granted, with respect to Shaw's cellular devices, laptop, and documents.

---

[1] The Court notes that, in support of its Supplemental Briefing, the United States attaches as an Exhibit a document titled "Custody Receipt for Seized Property and Evidence" relating to the April 29, 2021 incident involving Shaw.  (Doc. No. 10-1.)  This document indicates that the cellphones, laptop, "miscellaneous documents," and a 16GB Sandisk Cruzer seized from Shaw were released to Shaw's counsel, Clarissa Smith, on September 13, 2021.  (*Id*.)  Shaw does not contest the authenticity or accuracy of this document. Nor does he otherwise dispute that the United States returned these items.

**B.**     **$142, 140.00 in U.S. Currency**

The Court also denies Shaw's request for the return of the $142,140.00 in U.S. Currency which is the subject of the pending civil forfeiture proceeding in Case No. 1:21cv1616.  As Shaw himself appears to concede, the filing of *U.S. v. $142,140.00*, Case No. 1:21cv1616 (N.D. Ohio) provides a legal remedy for him to contest the seizure of these funds and seek their return.  Thus, the equitable remedy of Rule 41(g) is no longer available with respect to the currency that is the subject of that action.  *See One 1974 Learjet24D, Serial Number 24D-290, Mexican Registration XA-RMF*, 191 F.3d at 673 ("[a]fter the government initiates forfeiture proceedings and notifies a claimant of the proceedings, a claimant may no longer use [Rule 41(g)], but instead must submit to the statutory procedures governing civil forfeiture proceedings.")  *See also Shaw*, 891 F.2d at 603–04; *Oguaju*, 107 Fed. Appx. at 542; *$1,700,000*, 545 F.Supp.2d at 653; *Baranski*, 195 F.Supp.2d at 868.

Accordingly, Shaw's Motion is denied, and the United States' Motion to Dismiss is granted, with respect to the $142,140.00 in U.S. Currency that is the subject of the pending forfeiture action in Case No. 1:21cv1616.

**C.**     **The Additional $19,860.00 in U.S. Currency Allegedly Seized by Federal Agents**

The Court next considers the additional $19,860.00 in U.S. Currency that Shaw claims was also seized by federal agents on April 29, 2021.  As the parties now recognize, this presents a more complicated question.

As noted above, the United States asserted, in its Motion to Dismiss, that the pending civil forfeiture action (as opposed to the instant Rule 41(g) action) is the appropriate vehicle for Shaw to assert his claim for the additional $19,860.00 in U.S. Currency.  (Doc. No. 8 at p. 2.)  In its Supplemental Brief, however, the United States indicates that, upon research and review, it has

determined that "this position is incorrect." (Doc. No. 10 at p. 2.)  Rather, the United States now maintains that the instant Rule 41(g) action is, in fact, the proper action for the parties to litigate the claim that there was an additional $19,860.00 in U.S. Currency seized.  (*Id*.)  While Shaw did not oppose the United States' Motion to Dismiss, he now agrees that "[a] 41(g) Motion for Return of Illegally seized property is the appropriate vehicle for [him] to seek the return of the seized $19,860.00 in U.S. Currency not included in [Case No. 1:21cv1616]."  (Doc. No. 11 at p. 7.)

The Court agrees that the instant action is the appropriate vehicle to address Shaw's request for the return of the additional $19,860.00 in U.S. Currency that was allegedly seized by the United States on April 29, 2021.  The pending civil forfeiture action does not constitute an adequate legal remedy with respect to this additional currency because the forfeiture action does not name this additional currency as a defendant therein.  In addition, federal courts (including the Sixth Circuit) have found that claimants in *in rem* civil forfeiture proceedings may not file counterclaims against the United States.  *See Zappone v. United States*, 870 F.3d 551, 561 (6th Cir. 2017) ("A forfeiture action is a suit *in rem* against the *res,* or the seized property, the purpose of which is to determine 'ownership and control' over that property. *** In other words, a claim in a civil-forfeiture action is 'brought against property, not people.' *** And while the purported owner of the property may intervene in the action, he may not assert counterclaims against the United States.") (internal citations omitted); *United States v. One Lot of U.S. Currency ($68,000),* 927 F.2d 30, 34 (1st Cir. 1991) (same).[2]  *See also United States v. $22,832.00*, 2013 WL 4012712 at * 4 (N.D. Ohio Aug. 6, 2013) ("Claimants in an *in rem* civil forfeiture action generally may not file counterclaims against the

---

[2] *But see United States v. $4,480,466.16 in Funds Seized from Bank of America Account Ending in 2653*, 942 F.3d 655 (5th Cir. 2019) (disagreeing with decisions of Third and Sixth Circuits that claimants in *in rem* civil forfeiture proceedings "are barred, always and everywhere, from filing counterclaims").

government."); *United States v. Funds from Fifth Third Bank Account #0065006695*, 2013 WL 5914101 at * 12 (E.D. Mich. Nov. 4, 2013) (same); *United States v. Assorted Computer Equipment*, 2004 WL 784493 at * 2 (W.D. Tenn. Jan. 9, 2004) (same).

Moreover, faced with similar circumstances, courts have addressed requests for allegedly seized property that is not the subject of a pending forfeiture action, in the context of a Rule 41(g) motion. *See, e.g., Bailey v. United States*, 508 F.3d 736 (5th Cir. 2007); *Albinson*, 356 F.3d at 280-281; *Mora v. United States*, 955 F.2d 156 (2nd Cir. 1992). Accordingly, and in light of the parties' agreement on this issue, the Court will address Shaw's request for the return of the additional $19,860.00 in U.S. Currency in the instant action.

As discussed above, there is a factual dispute in the instant case regarding the amount of currency that the United States seized from Shaw on April 29, 2021. The United States asserts that it only seized $142,140.00 and that it "does not possess nor did it ever seize an additional $19,860.00 in U.S. Currency." (Doc. No. 10 at p. 7.) In support of this assertion, the United States provides the Affidavits of Homeland Security Investigations ("HSI") Special Agents Wesley Wood and Matthew Kampman. (Doc. Nos. 10-2, 10-3.) Therein, Special Agent Wood avers as follows:

> 2.      On April 29, 2021, as a Special Agent with HSI, I was involved with the seizure of $142,140.00 in U.S. Currency from the luggage belonging to Orville Shaw at Cleveland Hopkins International Airport.
>
> 3.      Group Supervisor Tim Stark and I reviewed the video footage from April 29, 2021, at the airport and at approximately 11:22 am, Task Force Officer Matt Saurer and I placed the seized currency into evidence bag L2069093 in the presence of Task Force Officer Paul Franckowiak, Special Agent Matthew Kampman and Group Supervisor Tim Stark.
>
> 4.      After the seized currency was placed in evidence bag L2069093, I sealed the bag and took a photograph of the bag prior to placing the sealed bag of currency in the HSI office safe.

11

5.      On April 30, 2021, Special Agent Kampman and I removed sealed evidence bag L2069093 from the HSI office safe and transported it to Loomis, a contracted facility, which handles HSI currency deposits.

6.      Special Agent Kampman and I arrived at Loomis with sealed evidence bag L2069093, Loomis representative Erica Canterbury took custody of the sealed bag, as noted on DHS Form 6051S #8002862.

7.      Representative Canterbury opened sealed evidence bag L2069093 in the presence of myself and Special Agent Kampman, counted all the U.S. Currency in the sealed bag, determined the total amount of U.S. Currency in the sealed bag was $142,140.00 and deposited the $142,140.00 in U.S. Currency into HSI's Treasury account.

(Doc. No. 10-2.) Special Agent Kampman avers to the same sequence of events and, further, authenticates a Homeland Security Custody Receipt and a Deposit Receipt related to the seized funds, both of which are attached to his Affidavit. (Doc. Nos. 10-3, 10-4, 10-5.)

The United States argues that the above evidence confirms that the government seized $142,140.00 in U.S. Currency, and not the "approximately $162,000.00" that Shaw alleges was seized from him. (Doc. No. 10 at p. 7.) The United States further asserts that an evidentiary hearing is not necessary and that Shaw's Rule 41(g) Motion should be denied. (*Id*.)

In response, Shaw insists that the amount of U.S. Currency seized from him is $162,000.00 (and not $142,140.00). (Doc. No. 11.) He attaches as Exhibits his two Verified Claims (dated May 13, 2021 and August 27, 2021), in which he expressly claims under penalty of perjury that the Government seized approximately $162,000.00 in U.S. Currency from on April 29, 2021. (Doc. Nos. 11-1, 11-2.) Shaw maintains that, "to the extent that the Court doubts Claimant's figure, it should hold an evidentiary hearing at which Claimant may testify and cross-examine the CBP agents who carried out the seizure." (Doc. No. 11 at p. 7.) Shaw asserts that resolution of this issue involves a

12

credibility determination by this Court which can only be decided after both parties have had an opportunity to present testimony at a hearing. (*Id.*)

As noted above, Rule 41(g) provides that district courts "must receive evidence on any factual issue necessary to decide the motion." Fed. R. Crim. P. 41(g). When the government denies possession of a claimant's property, a finding of whether the government possesses (or did possess) the property in question is a necessary predicate to the resolution of a motion for return of property under Rule 41(g). *See Bailey*, 508 F.3d at 739 ("A finding of whether the government actually possesses the additional currency Bailey seeks is therefore a necessary predicate to the resolution of his motion."); *Mora,* 955 F.2d at 159 (explaining that, when the government denies possession of a claimant's property, a finding of whether the government actually retains it and, if not, what happened to it, is a necessary predicate to deciding a motion for the return of property). Specifically, if the government asserts that it does not possess the property sought, the district court must determine (1) whether the property is, in fact, in possession of the government; and (2) if not, what happened to the property. *See Albinson*, 356 F.3d at 281-282; *Chambers,* 192 F.3d at 378. *See also United States v. Wilson*, 2011 WL 2160289 at * 2 (N.D. Ohio May 31, 2011).

Here, the Court finds that an evidentiary hearing is necessary. The amount of currency seized from Shaw by federal agents on April 29, 2021 constitutes a disputed fact necessary to the resolution of Shaw's Motion. While the United States has submitted affidavits and documentation purporting to show that only $142,140.00 was seized, Shaw has countered with sworn claims of his own stating that, in fact, government agents seized an additional $19,860.00 in U.S. currency. The Court finds that resolving this factual dispute involves a credibility determination and, therefore, an evidentiary hearing is necessary to determine (1) whether the government has ever been in possession of the

13

currency in question; and (2) if so, what happened to it. The Court, therefore, will set a telephonic conference to discuss an appropriate date and timeframe for scheduling an evidentiary hearing.

Finally, the Court notes that the parties devote considerable attention in their Supplemental Briefing to addressing the question of what remedies would be available to Shaw, if any, should the Court find that the United States was, at some point, in possession of the $19,860.00 in U.S. Currency but no longer is in possession of that currency. The question of remedies, however, "should arise only after the district court has investigated the status of the [allegedly] seized property." *Albinson,* 356 F.3d at 283. Therefore, the Court declines to address this issue at this time. The Court will revisit the issue of Shaw's potential remedies, if and as necessary after the Court has resolved the factual disputes noted above.[3]

## V.    Conclusion

Plaintiff's Motion for Return of Illegally Seized Property Pursuant to Fed. R. Crim. 41(g) (Doc. No.  1) is DENIED -- and Defendant's Motion to Dismiss (Doc. No. 8) is GRANTED-- with respect to the $142, 140.00 in U.S. Currency, four cellphones, laptop computer, and documents seized from Plaintiff on April 29, 2021.  Defendant's Motion to Dismiss (Doc. No. 8) is DENIED WITHOUT PREJUDICE with respect to the additional $19,860.00 in U.S. Currency that was also allegedly seized from Plaintiff. **The Court will conduct an in-person evidentiary hearing**

---

[3] Likewise, the Court need not address, at this time, Shaw's arguments that (1) the United States violated the notice provisions set forth in the Civil Asset Forfeiture Reform Act ("CAFRA") relating to the additional $19,860.00 allegedly seized from him; and (2) the United States' continued possession of said funds violates the Due Process Clause of the Fifth Amendment.  (Doc. No. 11 at pp. 2-3.)  Before reaching these arguments, the Court must first resolve the threshold issue of whether the United States did, in fact, seize this additional currency from Shaw on April 29, 2021, which can only be resolved after an evidentiary hearing.

regarding the status of this additional currency in Courtroom 16A at 2:00 p.m. on May 24, 2022.

IT IS SO ORDERED.


                                                   *s/Pamela A. Barker*
                                                 PAMELA A. BARKER
Date:  April 29, 2022                        U. S. DISTRICT JUDGE

15